Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Joseph K. Miller, State Bar No. 245685
E-Mail: jmiller@hurrellcantrall.com
Jerad J. Miller, State Bar No. 334001
E-Mail: jjmiller@hurrellcantrall.com
HURRELL CANTRALL LLP
725 S. Figueroa Street, Suite 3800
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendants, COUNTY OF LOS ANGELES, DEPUTY JOSEPH BENZA III, CAPTAIN CHRISTOPHER L. JOHNSON, SGT. THOMAS SPINKS, SGT. RAYMOND MUNOZ, SGT. JEREMIAH FLETCHER, COMMANDER ALLEN CASTELLANO, and CECILIA HERNANDEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| EMMETT BROCK,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, DEPUTY JOSEPH BENZA III, #616179, CAPTAIN CHRISTOPHER L. JOHNSON, #436139, SGT. THOMAS SPINKS #489744, SGT. RAYMOND MUNOZ #437471, SGT. JEREMIAH FLETCHER #522760, COMMANDER ALLEN CASTELLANO #431968, CECILIA HERNANDEZ #551350, DOES 2-10,<br><br>    Defendants. | Case No. 8:24-cv-00565-JWH (DFMx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY ORDERS**<br><br>Date:    03/11/2025<br>Time:   10:00 AM<br>Crtrm.:  6B<br>          Magistrate Judge, Hon. Douglas F. McCormick<br><br>[Assigned to District Judge Hon. John W. Holcomb, Courtroom 9D; Magistrate Judge, Hon. Douglas F. McCormick]<br><br>Trial Date:    10/06/25 |

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Defendant, County of Los Angeles hereby responds to Plaintiff Emmett Brock's Motion for Discovery Orders in the above captioned matter. [ECF DOC 74.]

/ / /

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | DEFENDANT COUNTY HAS SUBSTANTIALLY COMPLIED WITH PLAINTIFF'S DOCUMENT REQUESTS BY PRODUCING ALL DOCUMENTS, VIDEOS, AUDIO RECORDINGS RELATING TO THE SUBJECT INCIDENT AND ALL OF FORMER DEPUTY BENZA'S REQUESTED TRAINING RECORDS, CLAIMS, USE OF FORCE INCIDENTS AND SERVICE COMMENT REVIEW REPORTS | 1 |
| II. | FORMER DEPUTY BENZA'S ASSERTION OF HIS FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION IN RESPONSE TO PLAINTIFF'S INTERROGATORIES WAS PROPER WHEN ASSERTED AND REMAINS PROPER GIVEN THAT MR. BENZA FACES THE REAL THREAT OF ADDITIONAL CRIMINAL PROSECUTION AND CHARGES | 9 |
| III. | PLAINTIFF'S JOINT MOTION DID NOT COMPLY WITH COURT PROCEDURAL LIMITS AND WAS NOT PHYSICALLY PRESENTED IN A FORMAT PERMITTING ANY RESPONSE BY DEFENDANT COUNTY | 10 |
| IV. | DEFENDANTS INTEND TO SEEK A STIPULATION/MOTION FOR PROTECTIVE ORDER AND LIMITED STAY | 11 |
| V. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ........................................................ 10

*Craig v. Municipal Court*, 100 Cal.App.3d 69 (1979) .................................................. 6

*ESG Cap. Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014.) ............................................................................................................... 10, 12

*Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989) ......................................................................................................................... 11

*Greer, et al. v. County of San Diego, et al.* 127 F.4th 1216 (9th Cir. 2025.) ........... 2, 5

*Hoffman v. United States*, 341 U.S. 479, 486-487 (1951) ............................................ 9

*Keating v. Officer of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) ........ 11, 12

*Pritchard v. County of Erie (In re County of Erie)*, 473 F.3d 413, 419 (2d Cir. 2007) ........................................................................................................................... 3

*Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ................................ 13

*United States v. Kordel*, 397 U.S. 1 (1970) ................................................................ 11

*Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ................................................................................................................. 3

**OTHER AUTHORITIES**

California *Evidence Code* § 1043(a) ............................................................................ 6

California *Evidence Code* §§ 1040 and 1043 et. seq. .................................................. 6

California *Penal Code* § 832.5 ..................................................................................... 6

*California Penal Code* §§ 146e and 1328.5 ................................................................. 6

California *Penal Code* §§ 832.5, 832.7 and 832.8 ....................................................... 6

*California Vehicle Code* §§ 1808.2 and 1808.4 ........................................................... 6

I. **DEFENDANT COUNTY HAS SUBSTANTIALLY COMPLIED WITH PLAINTIFF'S DOCUMENT REQUESTS BY PRODUCING ALL DOCUMENTS, VIDEOS, AUDIO RECORDINGS RELATING TO THE SUBJECT INCIDENT AND ALL OF FORMER DEPUTY BENZA'S REQUESTED TRAINING RECORDS, CLAIMS, USE OF FORCE INCIDENTS AND SERVICE COMMENT REVIEW REPORTS**

Defendant County of Los Angeles ("County") has complied fully with all disclosures and Plaintiff's discovery. Defendant County has produced all documents responsive to Plaintiff's Request for Production Nos. 5, 7 and 16 (Defendant County's production of documents - COLA 000001-000327, 000328-000493, 000494-000724, 000740-000950) which include all investigative reports and evidence relating to the subject incident, Benza's use-of-force, claim investigations, service comment reports, and Deputy Benza's California POST certification and Department training records, transcript and reports. Plaintiff has received all claims, use-of-force incidents and service comment reports. The 1994 exemplar form that Counsel purports is missing is no longer used. Further, the Los Angeles County Sheriff's Department ("LASD") is not privy to any JSID investigation being conducted by the District Attorney. The District Attorney does not comment on ongoing investigations, including the reason for initiating any ongoing investigation. After a reasonable and diligent search by the Sheriff's Department with respect to Plaintiff's request 5K, no responsive documents have been located or identified.

Despite Defendant County's substantial compliance in responding to Plaintiff's numerous discovery requests, Plaintiff is left unsatisfied due to Defendant County's withholding of Deputy Benza's Personal Performance Index ("PPI"). The PPI (now known as the Performance Recording and Monitoring System ("PRSM")) is an attorney-client privileged information tool used for evaluating lawsuits and claims by the LASD Advocacy Unit in its role as legal advisor to Department Executives and Management. The Advocacy Unit oversees legal issues and provides legal advisement

to the Department's Case Review Committee, Executive Force Review Committee, Executive Risk Review Committee and Equity Oversight Panel. PRSM is protected Official Information Privileged information reflecting the Department's evaluations of claims and lawsuits which are attorney-client privileged material outside the scope of discovery in this matter. LASD's PPI/PRMS is comparable to the Critical Incident Review Board ("CIRB") reports at issue in *Greer, et al. v. County of San Diego, et al.* 127 F.4th 1216 (9th Cir. 2025.) Both LASD's PPI/PRMS and the CIRB reports in *Greer* are tools used to evaluate future or existing incidents, claims and in anticipation of or in response to lawsuits and litigation.

*Greer* supports Defendant County's position that Department PPI/PRMS is attorney-client privileged confidential official information, and is not subject to disclosure. *Greer* involves a case against the County of San Diego and the County's Critical Incident Review Board ("CIRB"), which assesses the Department's and County's civil litigation exposure with legal counsel as a result of use-of-force and other critical incidents involving the Sheriff's Department. The CIRB carefully reviews incidents from multiple perspectives, including training, tactics, policies, and procedures in response to claims with the ultimate goal of identifying problem areas and recommending remedial actions so that potential liability can be avoided in the future. *Id.* at 1219. The Ninth Circuit held that information contained in the CIRB reports was protected by attorney-client privilege.

The Court applied the following eight-part test to when determining whether the information was covered by attorney-client privilege: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived. *Id.* at 1224.

In determining that the CIRB was protected, the Court reasoned that when an incident happens, such as a non-natural death, the institution reasonably expects a

2

lawsuit to follow. "Investigation—that is, discovering what happened—is a necessary predicate to assessing liability for that past event and thus is not separate from the provision of legal advice. See *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (noting that the attorney-client "privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice"). *Id*., at 1224–25. "A lawyer's recommendations on both liability for past events and avoidance of future liability-creating events constitute legal advice (emphasis in original). See*, e.g., Pritchard v. County of Erie (In re County of Erie)*, 473 F.3d 413, 419 (2d Cir. 2007) ("Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct."). *Id.*

The PPI/PRSM is analogous to the CIRB in terms of providing liability analysis and litigation avoidance for LASD by legal counsel. Plaintiff's motion acknowledges the purpose of the PPI/PRSM is to serve as a tool for the Department to analyze and respond to critical incidents and litigation:

> "*Following the infamous Rodney King LAPD debacle in the 1990's the Los Angeles County Board of Supervisors created an investigative body to look into the operations of the County Sheriff's Department- including widespread misconduct throughout the department. It became known as the Kolts Commission and in 1992 Judge Kolts published a report of its findings and recommendation. Among them was to create an Early Warning System (EWS) as a management tool for the Department's supervisors to use to track known negative events in a deputy's employment such as the accrual of self-reported uses of force, administrative investigations and discipline, lawsuits, claims for damages, personnel complaint, motor vehicle accidents, shootings and the like. The PPI came to be regarded as a convenient "snapshot" of*

3

*the employee's performance with regard to commonly recognized negatives. Previously, none of this data was to be found in a central location, including the employees personnel records. Indeed, lawsuits, judgments, discipline and the like never appeared in the employee's personnel records. Separate and disparate files contained the data and were intentionally segregated.* <u>**EWS was adopted by the law enforcement community across the country as well as LASD to track the performance of employees and help identify those persons who were collecting recognized negative events such as lawsuits, complaints, damages claims and administrative investigations and discipline**</u> *(emphasis added.) The file at LASD became to be known as a Personal Performance Index or PPI. An exemplar of a 90's period PPI is appended hereto for the court's edification and understanding. The PPI continues to be in use as a description even though the Department has changed its name around 2014 to PRMS, Performance Recording and Monitoring System. PRMS reports remain comprehensive and are meant to be reviewed by sergeants and other supervisors at the time of reviews. They also have a role in Use of Force investigations.* (See, Joint Discovery Stipulation Pursuant to Local Rule 37-2.2, p. 17.)

The PRMS/PPI databases provide Sheriff's Department managers and executives and with readily accessible documentation in summary form about certain categories of incidents, including but not limited to all uses of force, shootings, citizen's complaints, administrative investigations, criminal investigations or prosecutions, civil claims, civil lawsuits, *Pitchess* Motions (See, Los Angeles County Sheriff's Department Manual of Policy and Procedures 3-02/085.30 – Management Guideleines. See also, 2-04/010.14 - 2-04/010.15.)  Credible instances and patterns of

inappropriate conduct influence selection for assignments, promotion, personnel evaluation, and imposition or augmentation of discipline to the extent appropriate and permitted by law. *Id*. All data in PRMS or elsewhere is available without limitation for purposes of risk management, **analysis and avoidance of liability and exposure**, identification of at-risk employees, and non-punitive interventions to assist such employees (emphasis added.) *Id*.

As defined by policy 3-02/085.30, PRMS was created to effectively assist the Sheriff's Department in avoiding liability and exposure based on incident information collected about department personnel. The PRMS Administrative Section tracks and stores information for response to **future civil or criminal court proceedings**. (See, Los Angeles County Sheriff's Department Manual of Policy and Procedures 2-04/010.14.) Without a means of cataloguing and tracking past employee incidents to implement departmental changes, ""negative conduct is likely to continue, generating increased liability for the agency," as well as other problems." *Greer*, at 1225. It follows that the PRMS/PPI, at its core, uses the evolution of legal principles and liability exposure to guide the Sheriff's Department's policies and procedures. The purpose of PRMS thus runs parallel to that of the CIRB, which, as discussed above, serves to avoid future exposure to liability based on past incidents with department personnel. As the Court in *Greer* held that the CIRB information was protected by attorney-client privilege, the Court should hold the same for Deputy Benza's PPI/PRMS. Requiring disclosure of Department PPI/PRMS would be inconsistent with holding of *Greer*, and the Court should deny disclosure of this information to Plaintiff.

Further, LASD has the responsibility of maintaining the confidentiality of PRMS information, internal affairs records, disciplinary records and personnel files, of its employees. It is required under constitutional, statutory and decisional law to invoke privileges and/or protections against discovery, disclosure of such records and to maintain the confidentiality of such records. Depending on the circumstances

5

presented by a given case, such privileges and/or protections against discovery or disclosure may be afforded by the United States Constitution, First Amendment, the California Constitution, Article I, Section 1; California *Penal Code* §§ 832.5, 832.7 and 832.8; California *Evidence Code* §§ 1040 and 1043 et. seq.; the Official Information Privilege; the right to privacy; and decisional law relating to such provisions. In addition, in any case in which discovery or disclosure is sought of an officer's personal performance or records maintained pursuant to California *Penal Code* § 832.5 or information from those records, LASD must notify the individual whose records are sought immediately upon receipt of written notice from the party seeking such records pursuant to California *Evidence Code* § 1043(a).

LASD's personnel generally understand and expect that information such as personal information, including information in their personnel file, such as disciplinary history and internal affair investigations, will not be voluntarily disclosed by them or their employer. Statutes such as *California Penal Code* §§ 146e and 1328.5 and *California Vehicle Code* §§ 1808.2 and 1808.4 explicitly recognize that the disclosure of certain information about law enforcement deputies can jeopardize their safety and the safety of their families. In view of the clear dangers of law enforcement work, LASD has an abiding interest in assuring the safety, security, and privacy of its personnel and their families to the fullest extent possible.

Based on *Craig v. Municipal Court*, 100 Cal.App.3d 69 (1979), it is incumbent upon law enforcement agencies such as the LASD to prevent unauthorized disclosure of any record which is compiled by them without a person's consent (i.e., arrest records) or records compiled with a person's consent, pursuant to some legal requirement that entitles the person to restrict access to the record. Law enforcement individuals have a legitimate expectation that records about them will be protected from disclosure by the LASD.

Among other types of confidential information kept regarding LASD's personnel in the personnel file and performance recording and monitoring system are

6

information on medical data, salary and benefits information, civil claims, lawsuits, investigations about conduct, disciplinary action, and personnel complaints, among others. Supervisors want and need to be able to evaluate the performance of their subordinates fairly, candidly and completely. Supervisors working relationships with their subordinates is important to them, to the subordinates, and to the department as a whole. Constructive and even negative criticism is sometimes necessary in evaluating the performance of one's subordinate.

In order to improve deputies' performances and thereby develop the quality of law enforcement services, measures such as criticism, counseling, changes of assignment, transfers and even discipline of deputies may be employed by superior deputies as an outgrowth of the performance evaluation process. These worthwhile objectives are not served when PRMS, LASD personnel files and internal affairs records can be used for purposes outside their intended purpose and scope. Correspondingly, some superior officers may become reluctant to evaluate subordinates quickly and candidly out of concern for the possible misuse of these confidential documents. Consistency and confidence in the confidentiality of these documents are vital to deputies, their superiors, and in the public's interest.

The personnel files and internal affairs investigation reports are compiled and kept by LASD for specific, limited purposes. Access to and dissemination of records within the Department is restricted to those employees who have a need to know or use the information within the records. Retrieval and circulation of such information for Departmental purposes nonetheless entails expenditure of time, money and human resources. Nevertheless, controlled access to and dissemination of records within the Department are regarded as essential to ensure the integrity and security of such records.

Indiscriminate disclosure and uncontrolled dissemination of confidential records, such as personnel records and internal affairs records, can jeopardize the safety of law enforcement officers and their family, disrupt the vital, day-to-day

7

operations of the Department; divert Department personnel from their regular duties; erode the integrity and security of such records; affect morale of many Departmental employees; consume inordinate time, expense and resources; and frustrate the legitimate specific purposes of compiling and maintaining such records.

The privacy interests of the involved Department members in this case would be threatened in that personal information concerning their background, identity, and development is contained within the records which plaintiff seeks. Disclosure of the materials at issue would violate theirs and each LASD personnel's reasonable expectation of privacy in the affairs of his or her personal life. If the material at issue in Plaintiff's discovery requests were disclosed to Plaintiff, substantial harm would be done to the threatened interests in that LASD would be forced to alter its self-critical analysis process; qualified individuals would be deterred from joining the LASD in anticipation of their lives being open for public display.

Even if any disclosure governed by a protective order restricting use of the information were disclosed, the fact that disclosure was made at all effectively compromises the privacy interests at stake. While a protective order may govern and restrict the use of the responsive documents themselves, it cannot protect against the possession and use of information contained within the documents. Once disclosed, the information in these documents may be improperly used and disseminated by anyone who comes into possession of such knowledge. Additionally, the mere fact that such private information will be known at all will be detrimental to the interests mentioned above.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8

## II. FORMER DEPUTY BENZA'S ASSERTION OF HIS FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION IN RESPONSE TO PLAINTIFF'S INTERROGATORIES WAS PROPER WHEN ASSERTED AND REMAINS PROPER GIVEN THAT MR. BENZA FACES THE REAL THREAT OF ADDITIONAL CRIMINAL PROSECUTION AND CHARGES

Plaintiff's motion and Deputy Benza's subsequent plea confirms that his assertion of the Fifth Amendment privilege in response to Plaintiff's interrogatories was properly made at the time the privilege was asserted because he was actually facing indictment by the U.S. Attorney's office at the time the privilege was asserted. Deputy Benza's plea in the federal criminal proceeding does not eliminate the real threat of additional criminal liability, or remove the need for the protections afforded him under the Fifth Amendment. He now faces criminal prosecution for additional crimes under state law based on his admissions in his federal plea. The threat of criminal prosecution remains real and imminent for former Deputy Benza. He has not waived his rights under the Fifth Amendment. His rights were properly asserted and he should not be compelled by this Court to waive his Fifth Amendment Rights. Plaintiff's questions in this civil case could clearly open the door to further charges or a waiver of his rightly asserted privilege. "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486-487 (1951).

Further, Plaintiff is not prejudiced by sustaining Deputy Benza's right to assert his Fifth Amendment privilege against self-incrimination. As this Court is aware, "[w]hile a defendant in a criminal case may constitutionally assert her Fifth Amendment rights with no adverse consequence, a trier of fact in a civil case may draw an adverse inference from invocation of the Fifth Amendment." *ESG Cap.*

9

*Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014.) "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Forcing Deputy Benza to participate in the discovery process without the ability to invoke his Fifth Amendment rights would endanger his liberty interests and possibly subject him to potential additional criminal charges based on the answers compelled. On the other hand, Plaintiff would not be prejudiced because he would be able to draw an adverse interest against Deputy Benza's invocation of his Fifth Amendment rights.

Accordingly, this Court should not compel Deputy Benza to withdraw his justified assertion of the Fifth Amendment privilege against self-incrimination. Further, no sanctions should be awarded to Plaintiff for Mr. Benza asserting his rights in this civil action.

### III. PLAINTIFF'S JOINT MOTION DID NOT COMPLY WITH COURT PROCEDURAL LIMITS AND WAS NOT PHYSICALLY PRESENTED IN A FORMAT PERMITTING ANY RESPONSE BY DEFENDANT COUNTY

Plaintiff's moving papers and the contention by Plaintiff's counsel that Plaintiff complied with this Court's procedures prior to filing the instant motion omits several important points and factors. Plaintiff's counsel did not send Defendants' counsel the proposed joint stipulation in an editable format. The purported draft was served to Defendants' counsel in pdf format and did not permit Defendants to insert Defendants' portion in response to Plaintiff's many numerous and exhaustive contentions. Plaintiff exhausted and exceeded the Court's mandatory established page limits not leaving any room for Defendants to respond even if Plaintiff had properly served the draft in an editable format. The joint stipulation sent on December 12, 2024 did not comply with the Court's rules such that Defendants were excluded from the Court's established process and procedures.

10

## IV. DEFENDANTS INTEND TO SEEK A STIPULATION/MOTION FOR PROTECTIVE ORDER AND LIMITED STAY

It is apparent from the U.S. Attorney's Information and Benza's plea that a real threat of criminal prosecution and indictment by the U.S. Attorney exists for other LASD personnel, including the three sergeants named and served as defendants in Plaintiff's civil lawsuit. To protect the Fifth Amendment interests of Deputy Benza and the other named Defendants, and to preserve the judicial economy by avoiding needless discovery motions based upon these grounds, Defendants intend to seek a motion for protective order and motion for limited stay if Plaintiff will not agree to stipulate to a continuance and stay pending the criminal proceedings. "[A] court may decide in its discretion to stay civil proceedings . . . when the interest of justice seems to require such action." *Keating v. Officer of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (internal quotation marks and citations omitted). "The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made 'in light of the particular circumstances and competing interests involved in the case.'" *Id.*, quoting *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). In *United States v. Kordel*, 397 U.S. 1 (1970), the Supreme Court recognized the propriety of staying a civil case to wait the determination of a related criminal case, where the government had brought both civil and criminal proceedings about misbranded drugs. The Court recognized that, "[f]ederal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interest of justice seemed to require such action, sometimes at the request of the prosecution [citations omitted]." *Id.* at 12.

A court may use its discretion to determine whether to stay civil proceedings when the interests of justice require this action. *See United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action . . . ."). In the Ninth Circuit, a multi-factor test articulated in

11

*Keating v. Office of Thrift Supervision* is used to determine whether to stay civil proceedings in the face of a parallel criminal proceeding. In determining whether a stay is warranted, the Ninth Circuit outlined factors a district court should consider:

> The extent to which the defendant's Fifth Amendment rights are implicated. In addition, the decisionmaker should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Keating*, 45 F.3d at 324-25 (internal citations omitted.)

Here, consideration of the above factors warrants staying this civil case pending the resolution of the criminal investigation. Given the direct factual overlap between the civil and criminal matters, Deputy Benza's Fifth Amendment rights are clearly implicated as any substantive testimony at trial could potentially be used against them in a criminal case and an adverse inference can be drawn against them should they refuse to participate in civil discovery proceedings by invoking the Fifth Amendment.

While "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege," whether the defendant's Fifth Amendment rights are implicated is a significant factor to consider. *Keating*, 45 F.3d at 325-26. The Fifth Amendment is implicated when parallel proceedings are "based on the same set of facts." *See ESG Capital Partners LP v. Statos*, 22 F.Supp.3d 1042, 1046 (C.D. Cal. 2014). If a civil litigant asserts their Fifth Amendment right, then "an adverse inference can be drawn against him." *Id.* at 1046 (relying on *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir.

12

2000)). On the other hand, "if he cooperates with discovery in the civil case or gives incriminating testimony, it can be used against him in the criminal trial." *Id*. Here, the Deputy Benza's Fifth Amendment rights are implicated because if forced to cooperate with the civil discovery proceedings while the parallel criminal investigation is pending, he would be placed in the highly prejudicial position of having to waive his Fifth Amendment rights or be faced with an adverse inference and the threat of punitive damages if he testify substantively.

The Court may remedy this prejudicial position by placing a limited stay on the civil case's proceedings. Accordingly, Defendants intend to seek a stipulation/motion for limited stay of proceedings with Plaintiff.

## V. **CONCLUSION**

Based on the foregoing, the Court should deny Plaintiff's motion for discovery orders.

DATED: March 7, 2025        HURRELL CANTRALL LLP

By:    */s/ Joseph K. Miller*
THOMAS C. HURRELL
JOSEPH K. MILLER
JERAD J. MILLER
Attorneys for Defendants, COUNTY OF LOS ANGELES, DEPUTY JOSEPH BENZA III, CAPTAIN CHRISTOPHER L. JOHNSON, SGT. THOMAS SPINKS, SGT. RAYMOND MUNOZ, SGT. JEREMIAH FLETCHER, COMMANDER ALLEN CASTELLANO, and CECILIA HERNANDEZ

13

# DECLARATION OF JOSEPH K. MILLER

I, Joseph K. Miller, declare:

1. I am an attorney duly licensed to practice before this Court and am an Partner with Hurrell Cantrall LLP, attorneys of record for COUNTY OF LOS ANGELES, DEPUTY JOSEPH BENZA III, CAPTAIN CHRISTOPHER L. JOHNSON, SGT. THOMAS SPINKS, SGT. RAYMOND MUNOZ, SGT. JEREMIAH FLETCHER, COMMANDER ALLEN CASTELLANO, and CECILIA HERNANDEZ herein. The facts set forth herein are of my own personal knowledge and if sworn I could and would testify competently thereto.

2. On August 29, 2024, Defendants produced initial disclosures to Thomas Beck, counsel for Plaintiff, in an email. The initial disclosures included bates stamped documents COLA 000001 – 000325.

3. On September 14, 2024, Defendants produced supplemental discovery, which included bates stamped documents COLA 000326 – 000327.

4. On October 21, 2024, Defendants produced supplemental discovery, which included bates stamped documents COLA 000328 – 000493.

5. On October 28, 2024, Defendants produced supplemental discovery, which included bates stamped documents COLA 000494 – 000724.

6. On December 23, 2024, Defendants produced supplemental discovery, which included bates stamped documents COLA 000740 – 000950.

7. COLA 000001 – 000950 includes all investigative reports and evidence relating to the subject incident, Deputy Joseph Benza's use-of-force, claim investigations, service comment reports, and Deputy Benza's California POST certification and Department training records, transcript and reports.

8. Plaintiff has received all claims, use-of-force incidents and service comment reports for former Deputy Benza.

9. Plaintiff's Joint Discovery Stipulation Pursuant to Local Rule 37-2.2 ("Stipulation") was served on December 12, 2024 in PDF format. The PDF format

could not be edited to add Defendant portions. Additionally, Plaintiff's introductory statement exceed the three page limit and the overall ten page limit, not leaving any room for Defendants' portions.

10. It is true that former Deputy Benza's plea was a surprise and has presented significant challenges with respect to the defense of this matter.

11. As a result, serious settlement discussions have taken place since the plea. I do not believe that Mr. Beck would disagree with that.

12. Given Mr. Benza's plea his assertion of the Fifth Amendment privilege appears to have been warranted. The plea has not removed the real threat of potential other criminal investigation or indictment.

13. I have been diligent in providing plaintiff with good faith and compliant responses to discovery and production of the documents sought.

14. I advised Mr. Beck that I would check to see if the PPI/PRMS he sought could be produced. I did not promise him that it would be produced.

15. I am advised by my client that the PPI/PRMS reports sought by plaintiff's discovery are privileged and used by the Sheriff's Department for litigation risk management, including consultation of legal advice and claims / litigation decision making within the Department.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on March 7, 2025, at Los Angeles, California.

_____
Joseph K. Miller