Thomas E. Beck, Esq. (SBN 81557)
THE BECK LAW FIRM
P.O. BOX 101
Los Alamitos, California 90720
Telephone No. (562) 795-5835
Email: thebecklawfirm@gmail.com

Attorneys for Plaintiff Emmett Brock

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMETT BROCK,<br><br>  Plaintiff,<br><br>  vs.<br><br>COUNTY OF LOS ANGELES, et. al.<br><br>  Defendants. | Case No. 8:24-cv-00565-JWH-DFM<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEFING RE ORDER DATED 2/27/25 DOC #74**<br><br>Date: Tuesday March 18, 2025<br>Time: 10:00AM<br>Ctrm: 6B Santa Ana<br><br>Trial Date: N/A |

Plaintiff Brock herewith responds to the Court's 2/7/25 Order [Document 74] and to Defendants "Opposition to Plaintiffs Motion for Discovery Orders [Document 75].

By the aforesaid order, the Court directed the defense to file a supplemental memorandum to Plaintiff's Notice of Motion with the appended CDLR Rule 37-2.2 "joint stipulation" lacking defendants' contentions. The Order directed the parties to *Greer v County of San Diego* 2025 WL441836 published 2/10/25, inviting comments to the application of *Greer* to the instant discovery dispute .

Plaintiff has reviewed *Greer* and maintains the ruling has no application to the distinct issues this motion presents. *Greer* concerns the reversal of the District Court's holding that an attorney-client privilege did not shield the particular CIRB

1

report in question. San Diego County's Critical Incident Review Board (CIRB) reporting was shown to have been the product of attorney-client communications and recommendations. "The CIRB's stated purpose is to consult with legal counsel when an incident occurs which may give rise to litigation, identify problem areas, and recommend remedial action to avoid future liability." *Greer v. Cnty. of San Diego*, No. 23-55607, at *2-3 (9th Cir. Feb. 10, 2025). "However, the Ninth Circuit did not make a general holding that all CIRB reports meet the criteria for attorney-client privilege". *Dunsmore v. San Diego Cnty. Sheriff's Dep't*, 20-cv-00406-AJB-DDL (S.D. Cal. Feb. 24, 2025).

In this case, Plaintiff does *not* seek discovery orders which are the product of consultation with the County or Sheriff's Department boards or bodies or attorneys that operates as CIRB did in *Greer*. Instead, Plaintiff seeks orders pertaining to open discovery items (inspection demands and interrogatories) none of which concern attorney-client communications or participation in any manner by COLA or LASD in house or outside counsel. The LASD *Chism* Custodian's Declaration (Captain Conti), sent with the defense objections did not mention, infer or suggest that any of these discovery items were the product of attorney-client privileged communications. Nor did Defendants responses to all three pre motion meet and confer communications support its "attorney client information" boilerplate objection as to Inspection Demand #5. This lacuna was exacerbated by the complete failure of the defense to provide it's contentions to the "joint" Rule 37-2.2 stipulation and to submit a privilege log asserting any privilege objections. The natural conclusion to all of these defaults has to be that if a genuine attorney-client objection existed, it would have been properly supported and defended. Instead Defendants waived the attorney client privilege as to Items F & K of Plaintiff's 5th Inspection Demand even if it theoretically existed. "But in any event, the argument cannot justify Beijing's failure to raise the issue before the district court as an objection to TFC's discovery request, or at the very least in response to the motion to compel. Its objections to the discovery

1  orders and the contempt adjudication based on the PRC secrecy laws were therefore
2  waived." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th
3  Cir. 1992).

4  Items F and K to Inspection Demand No. 5 seek disclosure of the complete
5  personnel complaint investigation (WCSCR #240180) into Brock's correspondence
6  with Sheriff Luna in March and April, 2023. [*See* Motion Stipulation p. 11.] Item F
7  identifies "Commander's Recommendations at every level up to and including Sheriff
8  Robert Luna and Chief of Staff Jason Skeen." Item K identifies communications in
9  any form between LASD and LA DA's JSID public prosecutions section concerning
10 Brock and Benza. Neither F nor K are shown to infringe on attorney-client privileged
11 communications.

12 Defendants belated effort [Doc 75] to argue privilege also fails to make the
13 mark. Brock's reports of the crimes against himself were not directed to counsel of
14 any kind inside or outside LASD, but directed to Sheriff Luna, then transmitted by
15 Chief of Staff Jason Skeen to department employees and then down to Defendant
16 Norwalk Captain Christopher Johnson in particular. Neither Skeen nor Luna treated
17 Brock's communications as reporting any crimes by Deputy Benza when the
18 complaint letter clearly pointed them to felonious misconduct. Captain Johnson was
19 directed to "handle" the WCSCR as a civil administrative matter. There is no
20 evidence that any of the decision making or the existence of Brock's complaints were
21 passed by any attorney for guidance or advice. The assignment to Johnson was a
22 patent conflict of interest. Captain Johnson had months earlier already signed off on
23 co-defendant Sgt. Thomas Spinks' Supervisor's Use of Force investigation in which
24 Spinks and Johnson fully exonerated Benza's illegal traffic stop along with Benza's
25 physical takedown, punches, and head "compression" which was the misnomer they
26 applied to Benza's having battered Plaintiff's head against the pavement while Benza
27 pinned him down. Sgt. Spinks carried out the Supervisor's Use of Force report
28 investigation, having taken over from defendant Sgt. Jeremiah Fletcher who started

it in the field. Both worked under the direct supervision of Lt. Tracy Stewart, the Norwalk stations Operations Lieutenant and adjutant to Captain Johnson. Thus when Sgt. Spinks was tasked with investigating Brock's personnel complaint, he was effectively called upon to investigate his own misconduct-another patent conflict of interest.

The bottom line for present purposes is that there is zero evidence anyone in this chain of command are shown to have sought advice from or were guided by an attorney in connection with the complaint investigations. The communications identified to be produced in Item F cannot be thought of as privileged attorney-client communications.

Likewise, Item K has not been shown to be protected by attorney-client privilege of any kind, let alone the CIRB style review in *Greer*. Plaintiff learned following the dismissal of the criminal case against himself, someone inside LASD, on August 21, 2023, referred Brock's complaint and investigation into Brock's complaints to JSID (Justice System Integrity Division- which prosecutes law enforcement defendants). Here too, no effort has been previously made to support the attorney-client privilege objection initially asserted. Nor does the belated Defense Opposition Brief present the controlling facts and evidence which would sustain an attorney-client communication privilege objection as to the documents that were passed to and from JSID to open that prosecution file. No attorney is shown to have played any role in the referral by the Sheriffs Department to prosecutors at JSID. Had the department not concluded it had probable cause to believe Benza committed crimes against Brock, there can be no basis for the JSID referral. That's not an attorney's decision, but one made by LASD management. The JSID referral would have been passed through multiple layers of approval within LASD, up to and including Sheriff Luna and would have been accompanied by a Letter of Transmittal by a ranking member of the department, presumably Internal Affairs Bureau (IAB) or the Commanding Officer at the internal criminal investigation bureau (ICIB)

1  copying Luna and/or Skeen and other LASD executives in Benza's chain of
2  command. These documents continue to be withheld from Brock, but from defense
3  counsel as well. Mr. Miller's declaration asserting no such communications exist is
4  belied by the JSID docket. None are not shown to be protected or privileged in any
5  manner let alone, attorney-client privilege in particular. But these materials are
6  probative and directly relevant to Brock's failure to supervise cause of action made
7  under § 1983 as well as his Monell claim allegations. Brock hastens to mention that
8  the August 2023 JSID referral aligns with the 10/31/24 Complaint Disposition
9  notification to Brock in accordance with §832.7 PC by Norwalk Captain Ethan
10 Marquez.  Marquez opaquely notified Brock his complaint had resulted in
11 "appropriate administrative action" omitting any mention of the JSID referral, did not
12 state any particular allegation Brock made was sustained, not sustained, or exonerated
13 as required by law. But Captain Marquez's correspondence is *entirely inconsistent*
14 with the WCSCR investigation report that Sgt. Spinks wrote. By the end of July,
15 2023, Spinks, Captain Johnson, Sgt. Munoz, and Sgt. Fletcher knew Spinks'
16 investigation report fully exonerated Benza from Brock's complaint allegations. If
17 that were true, there could never have been a JSID referral. These exonerations are
18 alleged to be fraudulent and misleading because of Spinks' knowledge that Benza's
19 biting-by- Brock defense was contrived and known to be false. Disclosure of Spink's
20 Use of Force and WCSCR investigations to date reveal  Spinks completely
21 suppressed his knowledge that Benza's EMS report along with Benza's Whittier
22 Hospital ER chart ruled out any biting injuries. Spinks omitted both pieces of
23 evidence from his WCSCR investigation, thereby eviscerating the defendants'
24 contrived justification for the viscous beating he gave Brock on camera. Plaintiff's
25 inspection demand K ties directly to the departments' apparent dissembling-speaking
26 out of two sides of one's mouth. To JSID the department brought attention to Benza's
27 felonies against Brock. To Brock, the department covered up Spinks' corrupt internal
28 investigation.

Most importantly for present purposes, against this background, the attorney-client privilege objection as to F and K of Inspection Demand No. 2 cannot be sustained because there is no factual foundation in existence to support it. And by these same reasons, *Greer v County of San Diego* has no bearing on Items F and K.

In addition to NTP #5, F & K, this motion seeks orders relating to Inspection Demands 7 (Current PPI/PRMS report) and 16 (Benza's background investigation including Benza PHQ.(Personal History Questionaire). As the pleadings bear out, the defense failed to raise the attorney-client privilege. See Joint Stip page 16, "Defendants 9/13/24 Responses to No. 7" and page 23 "Defendants Response to No. 16" These omissions foreclose the current assertion of an attorney-client work product objection and the attempt to cure it in the Opposition [Doc 75] the court invited presumably to make up for the complete absence of defense contentions to any of the disputed discovery demands. The Court's invitation for additional briefing relating to the *Greer* ruling does not relieve defendants of the failure to assert this privilege objection from the start. See *Richmark Corp. supra*. Defense counsel's characterization of the PPI/PRMS as an "attorney-client privileged information tool used for evaluating lawsuits and claims by the LASD Advocacy Unit in its role as legal advisor to Department Executives and Management" (Opp.p. 1:25-28) comes far too late. It is immaterial that the responses to these discovery items may be hypothetically used by LASD's Advocacy Unit at some future time or other case. It is the historical record that is being sought by these inspection demands, not advice or legal commentary that may or may not have existed with respect to either one of them. Indeed, there is no evidence that these particular documents have ever been considered by Advocacy Unit lawyers or been part and parcel of some legal advice rendered to LASD Management or Executives. To be sure, Benza's PPI and background investigation and his answers to the PHQ (Personal History Questionaire) are incapable of being LASD attorney-client privileged material. Nor has the recently

invited "Opposition" affirmatively demonstrated either category of documents established an attorney-client privilege. There is nothing about the way PPI/PRMS works or what it captures and tracks that is remotely analogous to San Diego's CIRB. No one inside LASD is shown to have identified Benza's PPI as a document that counsel were asked to opine about or apply to new rule making, training, tactics, policies and practices within the agency. There was no triggering event known to empanel a CIRB-like panel concerning Benza, as in custody deaths do in San Diego. And while it is undisputed that PPI/PRMS records exist to track deputy misconduct performance from it's founding as an Early Warning System, no deputy employee has been shown to be fired, demoted, reassigned or treated in any particular way because of what that employees PPI demonstrates. There is no evidence that the department has ever identified Benza prior to 2/10/23 as an employee that needed additional attention or posed a risk to the County or department because of his PPI. On this score, *Greer* has no application to the instant motion.

As to Defendants' assertions of official information privilege and privacy privileges under CA and federal law, Plaintiff's contentions have been set out in the "Joint" Stipulation and need not be repeated here.

Lastly, Benza's 5th Amendment objections to Brock's Interrogatories 16, 6, 7, 8, 9, 10, 11, 12, 14 and 15 are now obviated by his guilty plea in January 2025. As the pleadings demonstrate, at the time the joint stip was drafted in early December, 2024, there was wishful thinking that Benza might be prosecuted for what he did to Brock, but there was no confirmation of a pending criminal filing by JSID or the US Attorney. That changed shortly before Christmas with an unexpected Press Release that Benza was being prosecuted and agreed to plead guilty to violating Brock's civil rights. The conviction Benza sustained in the federal case in January 2025 covers any threat of additional prosecution that would allow the 5th Amendment invocations to these questions to stand. As the motion points out, some of these interrogatory questions would never call for Benza to fear prosecution by his truthful answer. He

1. is no longer a peace officer and cannot act under color of law. He is thereby shielded
2. from further prosecution by the US Attorney for any federal crimes that apply to or
3. arise from the Brock incident. There is also no evidence that JSID is going to
4. prosecute Benza, removing that threat as a basis for refusing to answer these
5. interrogatories on self incrimination grounds.
6.     *Greer* has no application to the interrogatory objections from the start because
7. Benza did not invoke a self incrimination objection at the time he objected to these
8. questions. Even if he had, *Greer* does not help him. The issue here is not that Benza
9. faces additional prosecution for some imaginary additional offense, but that Benza's
10. departure from the department and law enforcement employment enabled him to turn
11. his back on this case and avoid participating in discovery with complete impunity.

DATED: March 11, 2025

Respectfully submitted,

**THE BECK LAW FIRM**

By: /s/Thomas E. Beck
Thomas e. Beck
Attorneys for Plaintiff
Emmett Brock

## PROOF OF SERVICE

### BROCK v. COUNTY OF LOS ANGELES, et al.

STATE OF CALIFORNIA

COUNTY OF ORANGE

I am employed in the aforesaid county, State of California; I am over eighteen years of age and not a party to the within action; my business address is P.O. BOX 101, Los Alamitos, California 90720.

On March 11, 2025, I served the foregoing **PLAINTIFF'S SUPPLEMENTAL BRIEFING RE ORDER DATED 2/27/25 DOC #74** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope addressed as follows:

Joseph Miller, Esq.
HURRELL CANTRALL LLP
725 S. Figueroa St. Suite 3800
Los Angeles CA 90017
jmiller@hurrellcantrall.com

___ BY PERSONAL SERVICE: I caused to be delivered such document(s) by hand to the person(s) stated above.

_xx_ BY ELECTRONIC SERVICE AS TO DEFENSE COUNSEL: In addition to the above service by mail or hand delivery, I caused said document(s) to be transmitted by the Courts ECF filing system.

_xx_ (Federal/State) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 11, 2025 Los Alamitos, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Tom Beck